UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| WILLIAM STEVENSON, d/b/a Pen Bay Towing (a/k/a Maine Towing & Salvage), | ) ) ) | |
| *Petitioner* | ) ) | |
| v. | ) ) | Docket No. 05-240-P-S |
| OCTOBER PRINCESS HOLDINGS, LLC, et al., | ) ) ) ) | |
| *Respondents* | ) | |

*RECOMMENDED DECISION ON MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY PENDING ARBITRATION*

The petitioner filed on March 17, 2006 a motion to dismiss the counterclaim filed by the respondents or, in the alternative, to stay this action, which was initiated by a "Verified Petition to Compel Arbitration," Docket No. 1, pending arbitration of the underlying dispute, Motion to Dismiss Counterclaim, etc. ("Motion") (Docket No. 8). After reviewing the petition, the response and counterclaim, and the opposition and reply memoranda concerning the motion, I issued an order setting a date for an evidentiary hearing pursuant to 9 U.S.C. § 4, based on my conclusion that the making of the alleged arbitration agreement was in issue. Order (Docket No. 25). That hearing was held before me on May 9, 2006. Three witnesses testified and six exhibits were admitted into evidence. The parties have filed post-hearing briefs as agreed at the hearing.

The governing statute provides, in relevant part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction

> under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4.

## I. Proposed Findings of Fact

On July 16, 2005 John G. Rafter, Jr., a yacht master employed by the plaintiff's tow service in Boothbay Harbor, Maine, saw a vessel hard aground in Boothbay Harbor. He approached the vessel, the October Princess, in his boat, the Safe Return, which bore the legend "TowBoat/U.S." in large letters on each side and "Maine Towing & Salvage" is smaller letters on each side. He took a photograph of the October Princess (Petitioner's Exhibit 2) as he approached. The October Princess was listing to port. Rafter asked Thomas A. Toye III, who was on board the October Princess and was its master, whether he needed assistance. Toye declined assistance and stated that he would wait for the tide. Rafter maintained his position near the October Princess for one hour during which Toye attempted several times, unsuccessfully, to free the October Princes by using its bow thruster. Toye also checked the condition of the vessel and noted that its engines were still running, the depth gauge showed water, there was no water coming into the vessel and the bilge pumps were not operating.

Neither Rafter nor Toye recalls which of them initiated further contact, but after an hour Rafter brought the Safe Return close to the aft of the October Princess and threw a line to a crew member on the October Princess, who secured the line to that vessel. Using the single line, the Safe Return was able to tow the October Princess off the ledge on which she was grounded and into open water. The

tide was rising at the time. The tow took four to five minutes. There was no discussion of the terms or conditions of the service Rafter provided nor the nature of that service before the tow took place.[1]

After the October Princess floated free, Rafter boarded her and presented Toye with the standard form used by Pen Bay Towing Company to keep track of its services (Petitioner's Exhibit 3 before its completion). Rafter uses this form whenever he provides services with the Safe Return. The top of the form had been filled out by William Noble Stevenson, the owner of Pen Bay Towing Company. Rafter filled out the rest of the form after asking Toye for the necessary information. He then handed the form to Toye, who signed it and handed it back to Rafter. At no time did Rafter tell Toye that the service performed by the Safe Return was a salvage rather than a tow nor did he mention that arbitration of any disputes arising from the service just provided would be required. Rafter did ask Toye whether he was a member of BoatU.S.,[2] to which Toye responded affirmatively. Rafter did not give Toye an estimate of the cost of the service. If the service were categorized as a tow, the cost would probably have been less than $500. The petitioner is seeking to recover for the service as salvage, in which case the charge is based on the value of the vessel; in this case, the petitioner seeks more than $235,000. Toye would not have accepted the tow if he had been informed that he would be charged for a salvage or that the charge would be in excess of $235,000. The amount to be charged for the service was left blank on the form in accordance with Stevenson's instructions to Rafter.

There was little or no time for Rafter to talk with Toye about the form because the vessel was in neutral, causing the Safe Return to strike the October Princess from the stern and the wind was driving them toward a mooring area.

---

[1] Counsel for the petitioner took the position at the hearing that parol evidence was not admissible because the document offered as the written agreement to arbitrate (Petitioner's Exhibit 3) is unambiguous. I conclude that this form was anything but unambiguous.
[2] The witnesses appeared to use the titles "TowBoat/U.S." and "BoatU.S." interchangeably, but whether both titles refer to the same entity was never established at the hearing.

3

Toye testified that he signed Exhibit 3 to acknowledge that services had been provided and to give the petitioner billing information. He was not concerned about how much the tow would cost because he was a member of BoatU.S. The form looked like an invoice to Toye. Rafter did not ask him for insurance information. According to Toye, membership in Boat/U.S. provides special insurance rates and discounts on fuel and towing services.

Exhibit 3, the document at issue in this proceeding, bears no title. Under the heading "Description of Services   Basis for Charges (Rates, Time Spent, etc,," four boxes appear. The first three boxes are grouped together and read as follows:

> ☐ Towing: _____hours x rate _____
> ☐ Dock-to-Dock: _____hours x rate _____
> ☐ Ungrounding Charge Rate: _____hours x rate_____

Petitioner's Exh. 3. Following each of these lines is a column under the heading "Amount." *Id*. Below a solid line there is a box entitled "Salvage" which is also followed by the "Amount" column at the right of the form. *Id*. Both the box for "Ungrounding Charge Rate" and the box for "Salvage" are checked. *Id*.

> Below the "Description of Services" area of the form is the following, in small type:
>
> > Invoice is due and payable at completion of the requested service and interest of 1% monthly shall apply to any balance over thirty (30) days. The undersigned agrees to pay in full all charges including attorneys fees and costs should collection procedures be necessary. The undersigned agrees to indemnify and hold harmless the Towing Contractor, BoatU.S. and their agents, for any and all claims for bodily injury, property or environmental damage rising out of the work requested regardless of the cause. Disputes rising out of this agreement will be resolved by Arbitration in a mutually agreed upon domestic arbitration forum.

*Id*. Toye's signature appears at the bottom of the form. Toye was at the time of the events in question, and is now, the sole member of defendant October Princess Holdings LLC, the limited liability corporation that owns defendant M/V October Princess.

## II. Discussion

The petitioner contends that the respondents' challenge addresses only the entire alleged agreement rather than merely the arbitration clause on the form and that this is an issue that must be addressed by an arbitrator. Post-Hearing Brief of Petitioner ("Petitioner's Brief") (Docket No. 34) at 3-6. As the petitioner notes, *id*. at 4, the First Circuit has said in this regard that "[t]he teaching of *Prima Paint* [*Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)] is that a federal court must not remove from the arbitrator[] consideration of a substantive challenge to a contract unless there has been an independent challenge to the making of the arbitration clause itself." *Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 53 (1st Cir. 2002) (citation omitted). However, the First Circuit in that case also held that this "severability doctrine" applies to situations in which a party seeks only to avoid or rescind a contract and does not contend that a contract never existed. *Id*. at 53-54. This issue was clarified in the recent Supreme Court case, *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. ___, 126 S.Ct. 1204 (2006), on which the petitioner relies, Petitioner's Brief at 4-5. There, the Supreme Court disavowed any interpretation of *Prima Paint* as distinguishing between void and voidable contracts. 126 S.Ct. at 1210. The Supreme Court "reaffirm[ed] . . . that . . . a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Id*. An arbitration provision is severable from the remainder of a contract and, if the arbitration clause itself is challenged, the court must decide that issue, not the arbitrator. *Id*. at 1209.

The respondents' position cannot reasonably be construed as a challenge only to the validity of the alleged contract as a whole. While the respondents do challenge the entire agreement in a footnote, Respondents' Post Evidentiary Hearing Brief ("Respondents' Brief") (Docket No. 33) at 3 n.1, their primary argument is that Toye did not agree to arbitrate this or any dispute arising from the events of July 15, 2005. *Id*. at 5. The petitioner makes no other argument, significantly failing to address the

5

question I asked the parties at the close of the evidentiary hearing to address in their post-hearing briefs: whether the words "Invoice is due and payable at completion of the requested service," Petitioner's Exh. 3, are integral to the agreement to arbitrate so that no agreement to arbitrate can be said to exist in the absence of any dollar amount entered on the face of the document.

The respondents contend that the cited language is so integral to any agreement to arbitrate. Respondents' Brief at 3-4, 6. When the existence of an agreement to arbitrate is at issue, that question is to be decided with reference to state contract law principles. *Bangor Hydro-Elec. Co. v. New England Tel. & Tel. Co.*, 62 F.Supp.2d 152, 156 (D. Me. 1999). This court must apply the summary judgment standard to this question, giving the party opposing arbitration the benefit of all reasonable doubts and inferences that may arise. *Snow v. BE & K Constr. Co.*, 126 F.Supp.2d 5, 7 (D. Me. 2001). Even with the benefit of this standard, however, the respondents' cited authority establishes only that an entire contract may be void when the terms are uncertain as to price and "exclude the supposition that a reasonable price was intended." *Geller v. Harris Baking Co.*, 313 A.2d 125, 128 (Me. 1973); *see also Larson v. Johnson*, 184 F.Supp.2d 26, 32 (D. Me. 2002) (court could enforce agreement in which form or nature of payment left to one party's discretion so long as amount or extent of payment is fixed). This case law does not address the question whether the quoted payment provision and the arbitration provision of Petitioner's Exhibit 3 are so intertwined that the second may be effective only if an amount due is stated on the form. My own analysis leads me to the conclusion that they are not so entwined. The terms stated in the sentence immediately preceding the arbitration provision are not related to the payment term; that sentence concerns indemnification for tort claims. The arbitration provision is not limited to disputes about the petitioner's charge for the service rendered; it applies to all "[d]isputes rising out of this agreement." I conclude that the fact that no

amount due for the service is stated on the form does not establish that the parties did not agree to arbitrate disputes.[3]

The respondents also cite, Respondents' Brief at 4, the following language from Maine case law: "For a contract to be enforceable, the parties thereto must have a distinct and common intention which is communicated by each party to the other," *Stanton v. University of Me. Sys.*, 773 A.2d 1045, 1051 (Me. 2001) (citation and internal quotation marks omitted). Toye testified that he assumed that he would be billed for the tow through TowBoat/U.S. since he was a member of that organization and the Safe Return bore that name on its side, and he apparently did not read the form for that reason. However, the testimony did not suggest that he was prevented in any way from reading the form. Toye conceded that he is a sophisticated businessman, now retired, and that he has had a good deal of experience signing forms and entering into agreements. The respondents may not avoid arbitration simply because Toye chose not to learn what terms were set forth on the form, including the arbitration provision, before he signed it. *Coleman v. Prudential Bache Secs., Inc.*, 802 F.2d 1350, 1352 (11th Cir. 1986) (challenge to arbitration provision); *Sarbak v. Citigroup Global Mkts., Inc.*, 354 F.Supp.2d 531, 541 (D.N.J. 2004) (same; New Jersey law); *Francis v. Stinson*, 760 A.2d 209, 217 (Me. 2000) (same; stock purchase agreement).

"[T]he task of assessing whether the parties have agreed to arbitrate a given matter is undertaken with a healthy regard for the federal policy favoring arbitration." *Winterwood Farm, LLC v. JER, Inc.*, 327 F.Supp.2d 34, 39 (D. Me. 2004) (citation and internal quotation marks omitted). On the showing made, I can only conclude that the parties did agree to arbitrate this matter. That does not

---

[3] The respondents also rely, Respondents' Brief at 4, on the following language from case law: "[A] reservation to either party of an *unlimited* right to determine the nature and extent of his performance renders his obligation too indefinite for legal enforcement . . . ," *Millien v. Colby Coll.*, 874 A.2d 397, 402 (Me. 2005) (emphasis in original; citation omitted). However, in this case the petitioner has already performed; it has no right under the terms set forth on the form to determine the nature and extent of its performance, let alone an unlimited right. Nor do the respondents have such a right. This case law is not applicable to the facts of the instant case.

mean that the form constitutes a contract with any other terms or for any other purpose; that issue is reserved to the arbitrator.

### III.  Conclusion

For the foregoing reasons, I recommend that the foregoing proposed findings of fact be **ADOPTED** and the petitioner's motion for a stay be **GRANTED**.[4]

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 26th day of May, 2006.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge

---

[4] Should it be necessary to address explicitly the petitioner's alternative motion to dismiss the respondents' counterclaim, I recommend that the motion be denied.  *See Necchi Sewing Mach. Sales Corp. v. Necchi*, *S.p.A.*, 369 F.2d 579, 580 (2d Cir. 1966) (party objecting to arbitration should couple objection with all counterdemands it may wish to have arbitrated).

8